[No. 4828.]

## JOHN GSCHWEND v. J. B. ESTES ET AL.

ASSIGNMENT FOR THE BENEFIT OF CREDITORS. — If a debtor enters into an agreement with his creditors by which a person named in the agreement is to take charge and possession of his property as trustee for the creditors, and is to sell and dispose of the property, and the net proceeds are to be applied to the payment of debts, and the trustee accepts of the trust, and the creditors direct and control the trustee in the management of the business; the debtor is entitled in equity to have the proceeds in the hands of the trustee applied as a credit on the debts, and is not compelled to look to the trustee for the same if he fails to make a proper application of such proceeds.

APPEAL from the District Court, Seventh Judicial District, County of Mendocino.

The plaintiff was engaged in business in Mendocino County, and had a flouring-mill, a saw-mill, and a saloon. He became indebted to several persons, and, at the request of his creditors, the following agreement was entered into:

THIS AGREEMENT, made and entered into this     day of April, 1872, between John Gschwend, party of the first part, and the creditors of said John Gschwend, whose names are hereunto subscribed, parties of the second part, witnesseth: That whereas, the said party of the first part is justly indebted to said parties of the second part, and is desirous of paying each and all of his debts; and whereas, the said creditors, party of the second part, are desirous of securing their claims with as little costs and expenses to the said party of the first part, as possible: Now, then, it is hereby agreed that J. B. Estes shall take charge and possession as trustee, for the creditors, of all the assets of said John Gschwend, enumerated in a schedule hereunto annexed, marked Schedule "A;" and further, it is agreed that the said J. B. Estes shall take possession of the grist-mill and saw-mill of the said John Gschwend, in Anderson Valley, together with all the tools, implements and apparatus thereunto belonging, and also the saloon of the said Gschwend, at said mills, and all the stock and fixtures on

hand appertaining thereto, and the said J. B. Estes is hereby and shall be authorized to employ the necessary labor and furnish the necessary supplies to run said mills and saloon out of the proceeds thereof.   That said J. B. Estes shall be, and he is hereby authorized to sell and dispose of the flour and lumber to be manufactured at said mills, and also to sell and dispose of all the lumber now on hand at the best price that can be obtained; and it is further agreed that said J. B. Estes shall receive as compensation for his services as trustee, the sum of one hundred and fifty dollars per month from date, which, together with the cost and expenses of carrying on the business of said mills and saloon, shall be first deducted out of the proceeds, and the net proceeds arising from the sale of the property shall go to the payment of the debts marked on the schedule hereto annexed, marked Schedule " B;" and it is further agreed that said J. B. Estes shall, whenever all said debts are or may be paid, surrender to said John Gschwend all the property remaining in his hands as trustee aforesaid.

In witness whereof, we have hereunto subscribed our names this —— day of April, 1872.   John Gschwend, party of the first part; F. A. Butner, A. Marks & Co., C. M. Hargrave, by his attorney J. B. Lamar, John S. Briggs, by his attorney J. B. Lamar, John P. Smith, by his attorney J. B. Lamar, Bradley & Cockrill, by their attorney T. L. Carothers, John W. McAbee, G. W. Brown, W. J. Steen, P. G. Palmstream, J. H. Donohue, assignee of J. B. Ford, by his attorney J. B. Lamar, George B Clemons, Henry J. Abbott, James Kennedy, by his attorney J. B. Lamar, John Johnson, J. B. Lamar.

I accept the trust reposed in me by the annexed agreement between John Gschwend and his creditors under the terms herein specified.

J. B. ESTES.

April 15, 1872.

Appended to the agreement was a schedule containing a list of the personal property, consisting of lumber, cattle, wagons, mules, harness, chains, book accounts, etc.   There

was also a schedule containing a list of the debts due to the creditors. Estes took possession of the property and carried on the business of manufacturing flour and lumber, and selling the same, and selling liquor, until the 26th day of November, 1872, when he surrendered the mills, saloon, and property on hand at that time, to the plaintiff, with the consent of the defendants. The plaintiff, after the last-mentioned day, by his labor and industry, paid the debts due to Lamar, Clemons, and Brown. The other creditors claimed that their debts were still due, and threatened to enforce them; and some of them brought suits and recovered judgments, and the judgments were a lien on the real estate of the plaintiff. The creditors did not receive any of the proceeds which went into the hands of Estes. This was a bill in equity against Estes, the trustee, and the creditors, to have an account taken of the money in the hands of Estes, and to compel the creditors to credit the same on their demands. The court below held that the creditors could not be compelled to allow the money in the hands of Estes on their claims, and rendered judgment in their favor, but directed an account to be taken as to Estes, and held that the plaintiff must look to him alone. The plaintiff appealed.

*R. Harrison*, for the Appellant.

We have traced the money to Estes' hands, and it devolves upon the defendants to show what became of it. We had no control over the money in Estes' hands. It belonged to the creditors. They could control it. They could require Estes to pay it to them, or allow it to remain in his hands. We had no power to compel him to pay it to the creditors, nor was it our duty to see what he did with it. Estes was the especial agent of the creditors in carrying on the business, and their trustee in holding the money for them.

Estes may have been a trustee for Gschwend to the extent of taking good care of the property, using it for the purposes of the trust and delivering it back to Gschwend when the debts were paid; but Estes was in no sense of the word an agent of Gschwend's in disbursing the profits.

*R. McGarvey, T. L. Carothers and Lamar & Dozier,* for the Respondents.

By the COURT:

The agreement between the parties was that Estes should take the property *"as trustee for the creditors,"* and the court below found that the plaintiff, immediately after the signing of the agreement, delivered the property to Estes, who "proceeded to execute his trust according to the terms of the assignment, for the benefit of the plaintiff's creditors"— the defendants in this action. The court further found that some of the defendants directed and controlled Estes in the management of the business, and that they "held frequent meetings * * * for the purpose of managing said business and advising said Estes, and appointed one of their members treasurer, whose duty it was to receive, and who did receive, part of the moneys"—the proceeds of the sale of a part of the property transferred to Estes. The court also found that Estes afterward returned to the plaintiff a portion of the property, pursuant to a resolution of a meeting of the creditors directing him to do so. A further finding is that the profits received by Estes from the management and sale of the property amounted to several thousand dollars, and that no part of such profits was applied by Estes to the payment of the debts due to the defendants, but the whole of such profits was retained by Estes and converted to his own use. We are of opinion that upon these facts the plaintiff is equitably entitled to have an account of the moneys received by Estes taken under the direction of the court, and to a decree applying the same as a credit upon the several debts of the defendants *pro rata.* The judgment of the court below is therefore reversed, and the conclusions of law set aside and the cause is remanded for further proceedings not inconsistent with this opinion.